UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JAMES R. LUCA,

                Plaintiff,

        - against -

CANDICE GIACCONE, CARLO
DELLAPINA, FAIRFIELD FINANCIAL
MORTGAGE GROUP, INC., MICHAEL A.
HASKEL, ESQ., SCOTT A. STEINBERG,
ESQ.,

                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
16-CV-04975 (PKC) (ARL)

PAMELA K. CHEN, United States District Judge:

Presently before the Court are Plaintiff James R. Luca's ("Luca") and Defendant Fairfield Financial Mortgage Group, Inc.'s ("Fairfield") competing motions for an order declaring the priority of certain liens attached to funds paid by other defendants in a settlement of related actions brought by Fairfield and deposited into an escrow account ("Escrow Settlement Fund") held by Luca's counsel, La Reddola, Lester & Associates, LLP ("LL&A"). For the reasons stated herein, Luca's motion is denied and Fairfield's motion is granted. Accordingly, the Court declares that Fairfield's attorneys ("Fairfield's Attorneys") have a charging lien on the Escrow Settlement Fund and that Fairfield's Attorneys' charging lien has priority over any charging, retaining or judgment lien Luca or his attorneys, LL&A, may have on the Escrow Settlement Fund.

## BACKGROUND

### A. Fairfield-Luca Cases

In 2006, Fairfield commenced an action styled as *Fairfield Financial Mortgage Group, Inc. v. James R. Luca*, Case No. 06-CV-5962 (JMA) (SIL), (E.D.N.Y.) (hereinafter the "Disloyalty Case"). In the Disloyalty Case, Fairfield alleged that certain defendants breached their fiduciary

duty owed to Fairfield as its employees, by, *inter alia*, diverting brokerage business from Fairfield to Defendant Shaw Mortgage Group, Inc. ("Shaw"), a competing broker. (*See* Zlotnick Decl., Ex. A, Second Amended Complaint in Disloyalty Case, Dkt. No. 16-1, ¶¶ 16-44.)

In 2011, Fairfield commenced a second action, styled as *Fairfield Financial Mortgage Group, Inc. v. James R. Luca*, Case No. 11-CV-3802 (PKC) (ARL) (E.D.N.Y.) (hereinafter the "RICO Case"), against many of the same defendants who were sued in the Disloyalty Case, the facts of which provided a significant part of the background for the RICO Case (Collectively, the Disloyalty Case and the RICO Case will be referred to as the "Fairfield-Luca Cases"). The RICO Case arose from damages suffered by Shaw, a defendant in the Disloyalty Case, because of misappropriation of brokerage fees to which Shaw was entitled, but which were concealed from Shaw and ultimately paid to some of the defendants in the RICO Case. (*See* Zlotnick Decl. Ex. B, RICO Case Compl., Dkt. No. 16-2.) Shaw had assigned to Fairfield the claims asserted in the RICO Case. (*See* Zlotnick Decl. Ex. C, Agreement and Assignment of Claims, Dkt. No. 16-3, ¶ 3.)

On or about July 25, 2016, Fairfield and certain defendants in the Fairfield-Luca Cases resolved both actions pursuant to a single settlement agreement ("Settlement Agreement"), which provided for a discontinuance with prejudice against all signatories upon the happening of certain events, including the payment of monies to Fairfield (*i.e.*, the monies constituting the Escrow Settlement Fund) by certain defendants in the Fairfield-Luca Cases. (*See* Pl.'s Mem. of Law in Supp. of Order to Show Cause for Turnover Order, Dkt. No. 11 at ECF[1] 6; Def.'s Mem. of Law in Opp'n to Mot. by Luca, Dkt. No. 17 at ECF 7-8.)

---

[1] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

### B. The Towne Case

On or about August 2, 2016, Luca was assigned a judgment that had been entered against Fairfield and Fairfield's principal, Charles Levesque ("Levesque"), in an unrelated action brought by Towne Mortgage Company ("Towne"), styled as *Towne Mortgage Company v. Fairfield Financial Mortgage Group, Inc.*, Case No. 2:14-cv-14015 (E.D. Mich.) (hereinafter the "Towne Case"). (*See* Zlotnick Decl., Ex. D, Assignment of Judgment, Dkt. No. 16-4; Zlotnick Decl., Ex. E, Judgment against Fairfield in the Towne Case ("Luca Assigned Judgment"), Dkt. No. 16-5; *see generally* Zlotnick Decl., Ex. F, Towne Case Complaint ("Towne Case Compl."), Dkt. No. 16-6.) The Towne Case Complaint alleged, *inter alia*, that on February 26, 2008, Fairfield as a lender, had extended a loan to Abibi Ocampo-Guevara ("Guevara Loan" and "Guevara") through Linden Residential Credit Corporation ("Linden"), its broker; that Towne had purchased the Guevara Loan; that Guevara had defaulted on the Guevara Loan; that Towne subsequently sold the Guevara Loan to another entity; and that Towne had been injured because of Fairfield and Levesque's alleged breach of contract, breach of fiduciary duty, fraudulent misrepresentations, and fraudulent inducement, largely in connection with the Guevara Loan. (*See* Zlotnick Decl., Ex. F, Towne Case Compl., Dkt. No. 16-6, *passim.*)

On March 21, 2016, judgment was entered in the Towne Case, in favor of Towne and against Fairfield only, in the amount of $400,000. (Zlotnick Decl., Ex. E., Luca Assigned Judgment, Dkt. No. 16-5.) The judgment in Towne Case was assigned to Luca from Towne on August 2, 2016. (Zlotnick Decl., Ex. D, Assignment of Judgment, Dkt. No. 16-4.)

### C. The Turnover Case

On September 7, 2016, Plaintiff Luca filed the Complaint in the instant action (hereinafter the "Turnover Case"). (Complaint ("Compl.") Dkt. No. 1.) Luca initiated this action in an effort to collect on the Luca Assigned Judgment. Specifically, Luca seeks the following relief: (1)

3

judgment requiring Disloyalty and Rico Case Defendants Candice Giaccone ("Giaccone") and Carlo Dellapina ("Dellapina") turn over to Luca the amount Giaccone and Dellapina owe to Fairfield under the Settlement Agreement;[2] (2) a declaratory judgment declaring that upon Giaccone and Dellapina's turnover of the Settlement Amount to Luca, the Settlement Amount under the Settlement Agreement has been paid in full by the Settling Parties in the Fairfield-Luca Actions, and directing Fairfield to file stipulations of dismissal with prejudice in the Fairfield-Luca Actions with respect to the Settling Parties; and (3) a temporary restraining order and preliminary injunction staying, during the pendency of this action, the entry of judgment by Fairfield against the Settling Parties in the Fairfield-Luca Actions based upon any alleged violations of the terms of the Settlement Agreement by the Settling Parties. (Compl. at ECF 7-8.)

On September 8, 2016, the Court held a hearing where it ordered, in relevant part, (1) "the full amount due from all Defendants other than Tarasco and the Moberg Defendants shall be transferred timely, by 9/10/16, to Mr. Lester's [Luca's counsel in the Turnover Case] attorney escrow account, with Mr. Lester sending Plaintiff confirmation thereof;" (2) Jonathan Bruno, counsel for the Moberg Defendants in the Disloyalty Case, to "obtain the full agreed-upon settlement amounts due from the Moberg Defendants . . . and from Tarasco, and [to] transfer said settlement amounts to Mr. Lester, sending Plaintiff confirmation that he has done so;" and (3) "[u]pon receipt of these additional amounts, Mr. Lester shall inform Plaintiff that he holds the full agreed-upon settlement amounts from both [the RICO Case] and [the Disloyalty Case]. (Minute Entry dated September 8, 2016, in RICO Case, No. 11-cv-3802.) "Mr. Lester shall hold these

---

[2] Giaccone and Dellapina have paid these funds, as ordered by this Court at the September 8, 2016 hearing, to Steven M. Lester, Luca's counsel in the instant action, who is holding them in escrow in the Escrow Settlement Fund. (*See* Minute Entry dated September 8, 2016, in RICO Case, No. 11-cv-3802.)

4

settlement amounts in escrow, pending the Court's resolution of the priority of various liens asserted on those settlements amounts." (*Id.*) Giaccone deposited by wire transfer to LL&A's attorney IOLA[3] account the entirety of the amount she and the other settling defendants owed to Fairfield under the Settlement Agreement in the Fairfield-Luca cases. (*See* Def.'s Mem. of Law in Opp'n to Mot. by Luca, Dkt. No. 17 at ECF 10.)

By stipulation dated September 29, 2016, Luca, Fairfield, and Fairfield's counsel have agreed that if the Court determines that Fairfield's Attorneys have priority over Luca and LL&A with respect to the Escrow Settlement Fund, the Turnover Case Complaint will be dismissed with prejudice as against Fairfield and Fairfield's counsel, and any restraining notices affecting any funds deposited by Giaccone and Dellapina into LL&A's attorney IOLA account shall be withdrawn with prejudice with respect to the funds at issue in the Turnover Case, so that the Escrow Settlement Fund may be delivered to Fairfield and/or Fairfield's counsel. (Dkt. No. 9 ¶ 6.) On the other hand, if Luca or his attorneys prevail as to the priority issue, the funds deposited by Giaccone and Dellapina into LL&A's attorney IOLA account shall be used to satisfy the proceeds of the Luca Assigned Judgment, and upon the payment of such funds to Luca or LL&A, the Turnover Case shall be dismissed with prejudice. (*Id.*) The Court so ordered the September 29, 2016 Stipulation on August 2, 2017. (*See* Order dated August 2, 2017.)

On September 29, 2016, Luca's and Fairfield's motions asserting the priority of their attorneys' liens were fully briefed. (*See* Dkt. Nos. 10-13.) After the motions were filed, Disloyalty Case Defendant Eric Forte offered to settle the Disloyalty Case as to himself. (*See* Stipulation

---

[3] "An 'interest on lawyer account' or 'IOLA' is an unsegregated interest-bearing deposit account with a banking institution for the deposit by an attorney of qualified funds." New York State Interest on Lawyer Account Fund, http://iola.org/laws/judiciarylaw.pdf (last visited Aug. 20, 2017).

5

dated October 18, 2016, Dkt. No. 14 at ECF 1.) In response to Forte's offer, Luca, Fairfield, and Fairfield's counsel entered into a stipulation where Fairfield agreed to transfer the settlement amount received from Forte (the "Forte Proposed Settlement") to the Escrow Settlement Fund. (*See id.* at ECF 2 ¶¶ 1-2). The parties further agreed that if the Court determined that Luca and/or LL&A have priority as to the Escrow Settlement Fund, so much of the Escrow Settlement Fund (including the Forte Proposed Settlement) will be transferred to Luca and/or LL&A to satisfy any judgment lien Luca may have resulting from the Luca Assigned Judgment ("Judgment Lien") and any charging lien that LL&A may have, including interest up to the date of such payment. (*See id.* at ECF 2-3 ¶ 7.) The parties also agreed that if the Court determined that Fairfield's Attorneys' charging lien has priority over the Judgment Lien and LL&A's attorney's charging lien, the entirety of the Escrow Settlement Fund will be transferred to Fairfield's counsel, Law Offices of Michael A. Haskel, as attorney's fees. (*See id.*) The Court so ordered the October 18, 2016 Stipulation on October 19, 2016. (*See* Order dated October 19, 2016.)

## DISCUSSION

### A. Fairfield's Attorneys Have a Charging Lien as to the Escrow Settlement Fund

The charging lien[4] is a common law device "invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained." *Goodrich v. McDonald*, 19 N.E. 649, 651 (N.Y. 1889); *accord LMWT Realty Corp. v. Davis Agency Inc.*, 649 N.E.2d 1183, 1187 (N.Y. 1995); *In re Heinsheimer*, 108 N.E. 636, 637 (N.Y.

---

[4] Disputes relating to charging liens are cognizable in federal court. *See Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448–49 (2d Cir. 1998); *accord Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004) ("[W]henever a district court has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees.") (citations and internal quotation marks omitted).

1915). An attorney's charging lien "gives the attorney an equitable ownership interest in the client's cause of action," *LMWT Realty*, 649 N.E.2d at 1186, and ensures that the attorney can collect his fee from the funds that were obtained on behalf of his client as a result of the attorney's labors. *Rosenman & Colin v. Richard*, 850 F.2d 57, 61 (2d Cir. 1988); *see Gordon v. Shirley Duke Assocs.* (*In re Shirley Duke Assocs.*), 611 F.2d 15, 18 (2d Cir. 1979).

The charging lien is codified in Section 475 of New York's Judiciary Law, which provides, in relevant part:

> From the commencement of an action, special or other proceeding in any court . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come . . . .

N.Y. Jud. Law § 475. "The statute enlarges the common law charging lien to the extent that it now attaches to the cause of action even before judgment, but otherwise remains what it was at common law." *In re Schick*, 215 B.R. 13, 15 (Bankr. S.D.N.Y. 1997) (citing *In re Heinsheimer*, 108 N.E. at 637 and *LMWT Realty*, 649 N.E.2d at 1186). "The statute is remedial in character, and hence should be construed liberally in aid of the object sought by the legislature, which was to furnish security to attorneys by giving them a lien upon the subject of the action." *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 450 (2d Cir. 1998) (quoting *Fischer–Hansen v. Brooklyn Heights R. Co.*, 66 N.E. 397 (N.Y. 1903)) (internal quotation marks omitted).

"The prerequisites to the creation of a charging lien are well-settled; as a result of the attorney's efforts, (1) the client must assert a claim, (2) which can result in proceeds (3) payable to or for the benefit of the client." *In re Ramirez,* 528 B.R. 580, 596 (Bankr. S.D.N.Y. 2015) (quoting *In re Schick*, 215 B.R. at 15) (internal quotations marks omitted). Defense counsel, therefore, cannot obtain a charging lien unless their client asserts a counterclaim. *Id.* (citing

7

*United States v. J.H.W. & Gitlitz Deli & Bar, Inc.*, 499 F. Supp. 1010, 1014 (S.D.N.Y. 1980) (Weinfeld, J.); *United States v. Clinton*, 260 F. Supp. 84, 90 (S.D.N.Y. 1966); *Ekelman v. Marano*, 167 N.E. 211, 212 (N.Y. 1929); *Nat'l Exhibition Co. v.* Crane, 60 N.E. 768, 769 (N.Y. 1901); *United Orient Bank v. 450 W. 31st St. Owners Corp.*, 589 N.Y.S.2d 390, 390–91 (Sup. Ct. 1992). In addition to the funds being obtained as a result of the attorney's efforts, Section 475 requires that the attorney also obtain a "final order in his client's favor." Thus, the attorney "must recover the fund for the benefit of his client," and the attorney "gets no lien in proceeds recovered by another party even if they were created through his efforts." *In re Schick*, 215 B.R. at 15–16 (citations omitted).

Here, Fairfield's Attorneys have established that they have a charging lien over the Escrow Settlement Fund. Fairfield asserted a claim in the Fairfield-Luca Cases, which resulted in the settlement funds that are now being held in the Escrow Settlement Fund. The settlement funds were obtained through Fairfield's Attorneys' efforts for Fairfield's benefit. *See Butler, Fitzgerald & Potter v. Sequa Corp.* 250 F.3d 171, 177 (2d Cir. 2001) (citing N.Y. Judiciary Law § 475 ("From the commencement of an action . . . the attorney who appears for a party has a lien upon his client's cause of action . . . which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor.") and *In re Shirley Duke Assocs.*, 611 F.2d at 18 ("The rationale of section 475 is that an attorney should have a lien for his litigation efforts that bring a fund into existence; it is upon the fund thus created, either by judgment or settlement, that the lien is imposed.")). Thus, Fairfield's Attorneys have established that they have a charging lien for the proceeds of the Fairfield-Luca Cases, which are now being held in the Escrow Settlement Fund.

### B. Fairfield's Attorneys' Charging Lien Has Priority

Fairfield's Attorneys' charging lien has priority over any charging lien or judgment lien held by Luca or LL&A. First, the general New York rule in determining the priority of liens is

"first in time, first in right." *Granite Commercial Indus. LLC v. Landmark Am. Ins. Co.*, 909 F. Supp. 2d 191, 194 (E.D.N.Y. 2012). Here, Fairfield's Attorneys' charging lien attached in 2006 with respect to the Disloyalty Case and in 2011 with respect to the Rico Case. *See LMWT Realty*, 649 N.E.2d at 1186 ("The [attorneys' charging] lien comes into existence, without notice or filing, upon commencement of the action or proceeding."). The instant action, the only action initiated by Luca and LL&A, was commenced in September 2016, approximately five years after the Rico Case. (*See* Zlotnick Decl., Ex. B, Rico Case Compl., Dkt. No. 16-2; Compl., Dkt. No. 1). Thus, Fairfield's Attorneys' charging lien has priority over any charging lien that Luca or LL&A may possess with respect to the instant action because Fairfield's Attorneys' charging lien attached first. *See Granite*, 909 F. Supp. 2d at 194.

Further, even assuming that the Luca Assigned Judgment gave rise to a judgment lien possessed by Luca or LL&A, Fairfield's Attorneys' charging lien would also have priority over such a lien. The Luca Assigned Judgment was not entered until March 21, 2016, and the judgment was not assigned to Luca until August 2, 2016, both dates being approximately five years after Fairfield's Attorneys' charging lien attached in the Rico Case. (Zlotnick Decl., Ex. D, Assignment of Judgment, Dkt. No. 16-4; Zlotnick Decl., Ex. E., Luca Assigned Judgment, Dkt. No. 16-5.) Thus, based on timing, Fairfield's Attorneys' charging lien has priority over any judgment lien that Luca or LL&A may possess with respect to the Luca Assigned Judgment. *See Granite*, 909 F. Supp. 2d at 194.

Moreover, charging liens generally have "priority over other claims against the funds, including the claims of judgment creditors." *Beadwear, Inc. v. Media Brands, LLC*, No. 00 CIV 5483 AGS, 2001 WL 1622207, at *1 (S.D.N.Y. Dec. 18, 2001). The New York Court of Appeals in *Banque Indosuez v. Sopwith Holdings Corp.*, 772 N.E.2d 1112, 1117 (N.Y. 2002) specifically

held "that an attorney's charging lien maintains superiority over a right of setoff where the setoff is unrelated to the judgment or settlement to which the attorney's lien attached." Here, the Towne Case from which the Luca Assigned Judgment arose is completely unrelated to the Fairfield-Luca Cases giving rise to the settlement funds being held in the Escrow Settlement Fund. Thus, Fairfield's Attorneys' charging lien from the Fairfield-Luca Cases has priority over any judgment lien held by Luca and LL&A from the Luca Assigned Judgment, a judgment secured in an unrelated action. *See id.*; *Rebmann v. Wicks*, 688 N.Y.S.2d 293, 294 (App. Div. 4th Dep't 1999) ("Supreme Court properly determined that attorney's charging lien is superior to defendant's right of setoff pursuant to the judgment obtained by defendant in a subsequent action"); *Weiser v. City of New York*, 226 N.Y.S.2d 929, 930 (App. Div. 2d Dep't 1962) ("an attorney's lien on the funds he created should be granted priority over setoff judgments"); *Drake v. Pierce Butler Radiator Corp.*, 116 N.Y.S.2d 712, 716 (Sup. Ct. 1952) ("A judgment recovered in a separate action and assigned to a defendant cannot destroy the lien of the attorney for the plaintiff whose services have produced a judgment in his client's favor."); *see also Beecher v. Peter A. Vogt Mfg. Co.*, 125 N.E. 831, 833 (N.Y. 1920) ("Attorneys have by their labor produced a judgment. They have done so in reliance upon the assurance of the statute that the judgment, and the cause of action back of it, shall secure their pay. The debtors seek by the belated purchase of another judgment to frustrate the hope and belie the promise. Nothing that will move discretion to a departure from the rules of set-off as they prevail in courts of law, will be found in that endeavor.") (Cardozo, J.).

### C. LL&A Does Not Have a Retaining Lien on the Escrow Settlement Fund

Luca and LL&A also argue that LL&A have a retaining lien on the Escrow Settlement Fund because the Escrow Settlement Fund is in LL&A's possession and that their retaining lien should take priority over Fairfield's Attorneys' charging lien. Luca and LL&A are mistaken, however, because a retaining lien never attached to the Escrow Settlement Fund.

10

A retaining lien "is founded upon physical possession, and an attorney may forfeit its retaining lien by voluntarily giving away any of the items to which it may have attached." *Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York*, 754 N.Y.S.2d 220, 223 (App. Div. 1st Dep't 2002). A retaining lien "gives an attorney the right to keep, with certain exceptions, all of the papers, documents and other personal property of the client which have come into the lawyer's possession in his or her professional capacity as long as those items are related to the subject representation." *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 262 n.3 (2d Cir. 2004) (quoting *Schneider*, 754 N.Y.S.2d at 223). Funds held by an attorney in escrow is one exception where a retaining lien does not attach. *See Schelter v. Schelter*, 614 N.Y.S.2d 853, 854 (App. Div. 4th Dep't 1994) ("Funds held in escrow or in a custodial capacity are not subject to an attorney's retaining lien."); *Marsano v. State Bank of Albany*, 279 N.Y.S.2d 817, 820 (App. Div. 3d Dep't 1967) (holding that an attorney who received funds in escrow from a settlement he had negotiated on behalf of his client "was merely a custodian of the funds in a sense not contemplated by the term 'possessor' as employed in retaining lien cases; and as such trustee or escrowee, he [was] not entitled to a retaining lien"); *J.H.W. & Gitlitz*, 499 F. Supp. at 1015 (holding that an attorney who received funds in escrow for his client was not entitled to a retaining lien because he "did not receive the funds in his capacity as an attorney").

Here, the funds from the Disloyalty and RICO Case settlements were deposited with LL&A in the Escrow Settlement Fund, as directed by the Court, to ensure that they were not dissipated by the other defendants in the Fairfield-Luca Cases during the pendency of this litigation, the purpose of which is to determine which party is entitled to the funds. The funds were not delivered to LL&A in their role as attorneys on behalf of their client, Luca, but rather, in LL&A's role as escrow agent for safekeeping. Accordingly, no retaining lien in favor of LL&A attached to the

11

Escrow Settlement Fund by virtue of LL&A's physical possession of those funds. *See e.g., Mayeri Corp. v. Shea & Gould*, 447 N.Y.S.2d 413, 415 (Sup. Ct. 1982). Just as in *Mayeri*:

> Here, the person . . . who will be entitled to the fund awaits the determination of pending litigation. Thus, although the creation of the escrow was obviously closely related to the professional work being done by [LL&A], the funds were not delivered to them as attorney for their clients, but rather as coescrowee. In such capacity there is nothing in the papers to indicate that they should be entitled to a possessory retaining lien with respect thereto.

Furthermore, even if a retaining lien had attached to the Escrow Settlement Fund, it would also be subordinate to Fairfield's Attorneys' charging lien because the retaining lien would have attached in 2016 when the funds were deposited by the other settling defendants, approximately five years after Fairfield's Attorneys' charging lien in the RICO Case attached.

## CONCLUSION

For the reasons discussed above, the Court declares that Fairfield's Attorneys have a charging lien over the funds deposited in the Escrow Settlement Fund and that Fairfield's Attorneys' charging lien has priority over any charging or judgment lien possessed by Luca or LL&A. Further, the Court finds that LL&A does not possess a retaining lien over the funds deposited in the Escrow Settlement Fund, and, even if LL&A did possess a retaining lien, it would be subordinate to Fairfield's Attorneys' charging lien. Accordingly, Luca's motion is denied and Fairfield's motion is granted.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: August 24, 2017
      Brooklyn, New York